United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LAZARIS ITALO FULLER,

    Plaintiff,

    v.

OFFICER CANTRELL, OFFICER R. THOMAS, OFFICER TONG, OFFICER POMEROY, SERGEANT DIXON, OFFICER MOODY, OFFICER FORMAN, OFFICER FUNK,

    Defendants
                                   /

No. C-03-5616 MMC (PR)

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; DIRECTING PLAINTIFF TO NOTIFY COURT WHETHER HE SEEKS APPOINTMENT OF PRO BONO COUNSEL**

**(Docket Nos. 23, 28)**

    Plaintiff, an inmate at San Quentin State Prison, filed this pro se civil rights complaint pursuant to 42 U.S.C. § 1983 against defendants, all police officers employed by the Richmond Police Department, for the use of excessive force during the course of his arrest. On January 21, 2004, this Court found plaintiff's claims cognizable, and ordered defendants to file a motion for summary judgment or other dispositive motion, or, in the alternative, to advise the Court that defendants are of the opinion that the case cannot be resolved by such a motion. Defendants thereafter filed a motion for summary judgment, on the grounds that there are no material facts in dispute and that they are entitled to qualified immunity. Although afforded ample time to do so, plaintiff has not filed an opposition. The Court nevertheless treats the allegations in plaintiff's verified complaint as an opposing affidavit to the extent such allegations are based on plaintiff's personal knowledge and set forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

**DISCUSSION**

A.  Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those that may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  See id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (holding fact material if it might affect outcome of suit under governing law, and that dispute about material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the depositions, answers to interrogatories, or admissions on file, designate specific facts showing that there is a genuine issue for trial."  See Celotex, 477 U.S. at 324 (internal quotations and citations omitted).

At summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th

1 Cir. 1987).

2 B.      Evidence Presented

Defendants have submitted evidence of the following undisputed facts in support of their motion.[1]  On January 5, 2003, plaintiff met for the first time and befriended a woman by the name of "Candy."  Over the course of that day, plaintiff and Candy continuously smoked crack cocaine at various locations, eventually ending up in a public park portable toilet where plaintiff hit Candy for not paying him for the cocaine.[2]  At 12:16 a.m., Officer Cantrell received a report of a black man fighting with a woman in the park.  Officer Cantrell, his partner Officer Tong, and Officer Cantrell's police dog "Arrow" arrived at the scene.  After seeing the police car arrive, plaintiff came out of the toilet.  After Officer Cantrell asked plaintiff to come talk to him, Candy appeared, yelling that she had been raped by plaintiff.  At this point, plaintiff ran away.[3]  Officer Tong did not pursue plaintiff and instead remained with Candy in the park. Upon receiving Sergeant Dixon's approval to use dogs to apprehend plaintiff, Officer Cantrell, Officer Forman and Officer Pomeroy, accompanied by their dogs, each searched the surrounding residential area independently.  After approximately one and a half hours, Officer Forman's dog tracked down plaintiff in a residential backyard, but plaintiff escaped by punching the dog and jumping over a fence into an adjoining backyard, at which point Officer Forman's participation in the chase ceased.  Officer Cantrell and Officer Pomeroy located plaintiff immediately after plaintiff escaped from Officer Forman, at which point Officer Pomeroy "pushed on the fence" and Officer Cantrell and Arrow then entered the yard.

Plaintiff's and defendants' accounts of what next happened diverge.  According to Officer Cantrell's declaration, he ordered plaintiff to the ground, but plaintiff refused, saying,

---

[1] These facts are set forth in declarations by Officer Forman and Officer Cantrell, as well as in plaintiff's deposition.  (See Fitzgerald Decl. Ex. A).

[2] Candy also claims that plaintiff raped and sexually assaulted her, claims which plaintiff denies.

[3] Plaintiff later explained to the police that he had planned to flee because he was on parole, because he hit Candy, and because he assumed that the police would believe Candy's rape allegations.

1  "Fuck you."  (See Cantrell Decl. ¶¶ 29-30.)  Officer Cantrell states that plaintiff then took steps,
2  and Officer Cantrell warned, "Stop or I'll send my dog."  (See id. at ¶ 31.)  Officer Cantrell
3  states that plaintiff took another step to see where Arrow was located, and that Officer Cantrell
4  then repeated his warning.  (See id. at ¶¶ 32-33.)  Finally, Officer Cantrell states that he
5  released Arrow to stop plaintiff's escape because plaintiff took another step in an attempt to
6  flee.  (See id. at ¶ 34.)  Officer Cantrell states that the attack lasted "under one minute," (see
7  id. at ¶ 39), after which Officers Thomas, Moody and Funk handcuffed Plaintiff.  (See id. at ¶
8  40.)[4]

9        Plaintiff's account differs significantly.  According to his verified complaint, plaintiff
10  surrendered once he knew he was surrounded by the officers.  Although plaintiff does not,
11  either in his complaint or deposition, differentiate between the officers by name, he initially
12  stated at his deposition, "There was four police back there," (see Fitzgerald Decl. (Fuller
13  Deposition) Ex. A at 41), and later stated, "There was at least four of them," (see id. at 44).
14  According to plaintiff, he was told to "freeze," and he then complied with the officers' orders:
15  "They said, get on your knees; I get on my knees.  They say, get on the ground; get on the
16  ground.  Put your hands behind your back; I put my hands behind my back."  (See id.)  Plaintiff
17  states in his complaint that at this point he was not armed, combative or resistant.  (See Fuller
18  Complaint at 3.)  Plaintiff further states that Officer Cantrell nonetheless ordered Arrow to
19  attack him, and that the attack resulted in a gash in his neck that has left him paralyzed in the
20  face.  (See id.)  According to plaintiff, the attack lasted approximately 16 seconds.  (See
21  Fitzgerald Decl. (Fuller Deposition) Ex. A at 41.)

22  C.    Legal Claims

23        Defendants move for summary judgment on plaintiff's claim that defendants used
24  excessive force during the course of his arrest, and assert qualified immunity as the basis for
25  their motion.  A qualified immunity defense requires the court to first ask whether, based on
26  the facts taken in the light most favorable to the injured party, the officer's conduct violated a
27
28      [4] None of these defendants has submitted a declaration, and Officer Cantrell provides no statement as to the timing of their arrival.

4

constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  If no violation occurred, the inquiry ends.  See id.  If a violation occurred, however, the court's next inquiry is whether plaintiff's right was clearly established at the time of the event in question.  See id.

      1. *Use of Force*

      Excessive force claims that arise in the context of an arrest or seizure invoke the protection of the Fourth Amendment right to be free from "unreasonable . . . seizures."  U.S. Const. amend. IV; see Graham v. Connor, 490 U.S. 386, 394 (1989).  Whether the amount of force used in a seizure or arrest is excessive is analyzed under the Fourth Amendment's "objectively reasonable standard," which requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  See id. at 396.  The fact-specific inquiry considers (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers and others, and (3) whether the suspect is actively resisting arrest or attempting to escape.  See id.  Although these factors guide the reasonableness analysis, they are not exclusive and are not to be applied mechanically.  See id.  Further, the reasonableness standard must be applied objectively, in that the facts are viewed from the perspective of the officer at the time of the incident rather than in hindsight, and without examining the officer's underlying intent or motivation.  See id. at 397.

      Plaintiff has shown that a genuine issue of material fact exists as to whether Officer Cantrell used excessive force in violation of the Fourth Amendment.  As discussed earlier, plaintiff and Officer Cantrell dispute the circumstances under which Officer Cantrell released Arrow.  On the one hand, Officer Cantrell states that despite repeatedly ordering plaintiff to surrender and warning plaintiff of the possibility of his releasing Arrow, plaintiff defiantly attempted to flee.  On the other hand, plaintiff states in his deposition that he followed Officer Cantrell's orders and fully surrendered by dropping to the ground, getting on his knees, and putting his arms behind his back.

      As discussed, the Court, for summary judgment purposes, must view the evidence in the light most favorable to the nonmoving party, in this case the plaintiff.  If direct evidence

produced by the plaintiff contradicts evidence produced by the defendants, the Court must assume the truth of the evidence set forth by the plaintiff with respect to that fact.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  Accordingly, if plaintiff's account as to when he surrendered is accepted, Officer Cantrell's conduct cannot, for purposes of summary judgment, be considered reasonable.  See Watkins v. City of Oakland, 145 F.3d 1087 (9th Cir. 1998) (holding officer used excessive force in not calling off attack by police dog after plaintiff had surrendered).  Although defendants rely on two cases in which use of police dogs in apprehending suspects was found reasonable, see Miller v. Clark County, 340 F.3d 959, 968 (9th Cir. 2003) (holding use of dog to "bite and hold" fleeing suspect's arm until deputy arrived on scene not excessive force in violation of Fourth Amendment); Mendoza v. Block, 27 F.3d 1357, 1362-63 (9th Cir. 1994) (finding use of dog to locate and restrain suspect until he stopped struggling objectively reasonable under circumstances), such cases are distinguishable from the instant case as in both instances the dogs were used to apprehend suspects while the suspects were still actively evading arrest.  See Miller v. Clark County, 340 F.3d at 967-68; see also Mendoza v. Block, 27 F.3d at 1358.  Accordingly, Officer Cantrell is not entitled to summary judgment on the issue of whether he violated plaintiff's constitutional rights.

Defendants further argue that, at a minimum, all of the officers other than Officer Cantrell, none of whom exerted control over Arrow, should be dismissed.  As described above, Officer Cantrell states that Officer Pomeroy "pushed on the fence" prior to Officer Cantrell's discovering plaintiff, and that Officers Moody, Thomas and Funk arrested plaintiff after the attack.  Under certain circumstances, police officers may be held liable where they have an opportunity to intercede, but fail to do so, when their fellow officers violate a plaintiff's constitutional rights.  See U.S. v. Koon, 34 F.3d 1416, 1447 n. 25 (9th Cir. 1994) ("Pursuant to a long line of civil cases, police officers have a duty to intercede where their fellow officers violate the constitutional rights of a suspect or other citizen."); cf. Cunningham v. Gates, 229 F.3d 1271, 1289-90 (9th Cir. 2000) (finding officers not present at time of shooting not liable for failing to intercede to prevent shooting of plaintiff, as they had no "realistic opportunity" to

intercede.)

Here, Officers Pomeroy, Thomas, Moody and Funk are not entitled to summary judgment on the issue of whether they violated plaintiff's constitutional rights. As noted, plaintiff, in his deposition, states that at the time of the attack, there were "at least four" officers present. According to Officer Cantrell, he and Officer Pomeroy discovered plaintiff's whereabouts, and Officer Pomeroy "pushed on the fence" before Officer Cantrell and Arrow entered the yard. While Officer Cantrell does not state that Officer Pomeroy also entered the yard or that Officer Pomeroy witnessed the attack, he does not state that Officer Pomeroy was absent. On this record, a trier of fact reasonably could infer that Officer Pomeroy was in fact present on the scene at the time the attack was ordered. Similarly, while plaintiff does not name the officers present at the time of the attack, his statement that there were "at least four" officers present is not inconsistent with Officer Cantrell's placing Officers Thomas, Moody and Funk at the scene. Again, a trier of fact reasonably could infer that these three defendants likewise were present at the time the attack was ordered. Although it might be argued that Officers Pomeroy, Thomas, Moody and Funk did not interfere because Arrow only responds to Officer Cantrell, or that there was insufficient time for a bystander to intercede, see U.S. v. Koon, 34 F.3d at 1448 n. 26 (noting, "if the blows had been struck so rapidly that Koon had no realistic opportunity to intervene, he would not be liable"), defendants here submitted no evidence to support either such finding. Viewing the evidence in the light most favorable to plaintiff, a reasonable trier of fact could find each of the officers on the scene at the time Officer Cantrell ordered the attack had a "realistic opportunity" to intercede. See Cunningham v. Gates, 229 F.3d at 1290.

A similar inference cannot be drawn with respect to the remaining three defendants, however. As noted, Officers Tong and Forman were not physically present at the time of the attack, nor is there evidence that Sergeant Dixon, who initially gave approval to use a dog to apprehend a fleeing suspect, was present at the scene or otherwise made aware of plaintiff's surrender. In sum, there is no evidence from which a reasonable inference may be drawn that Officer Tong, Officer Forman, or Sergeant Dixon had a realistic opportunity to intervene in

7

Arrow's attack on plaintiff.  Consequently, plaintiff has failed to demonstrate a genuine issue of material fact exists as to whether these defendants violated plaintiff's constitutional rights. Accordingly, Officer Tong, Officer Forman, and Sergeant Dixon are entitled to summary judgment.

      2.  *Clearly Established Constitutional Right*

The Court next considers whether the constitutional right at issue was "clearly established."  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  In determining whether a right is "clearly established, the key question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  See id. at 202.  Because an officer "might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances," qualified immunity can serve as a valid defense if the officer's mistake was reasonable.  See id. at 205.  In excessive force cases, therefore, qualified immunity operates to protect officers from the sometimes "hazy border between excessive and acceptable force."  See id. at 206.

Here, given plaintiff's version of the events, Officers Cantrell, Pomeroy, Thomas, Moody and Funk are not entitled to qualified immunity.  Officer Cantrell's conduct in ordering Arrow to attack plaintiff after he surrendered cannot be construed as a reasonable mistaken understanding as to whether the amount of force used was legal.  See Watkins v. Oakland, 145 F.3d at 1093 (affirming district court's denial of qualified immunity on summary judgment, on ground it was "clearly established" that authorizing dog attack on surrendered suspect was unconstitutional).  Similarly, the failure to intercede on the part of Officers Pomeroy, Thomas, Moody and Funk cannot be construed as a reasonable mistaken understanding as to their duty to do so.  See U.S. v. Koon, 34 F.3d at 1447 n. 25 (holding violation of constitutional right by passive officer standing by no different than violation by officer delivering blows). Accordingly, Officers Cantrell, Pomeroy, Thomas, Moody and Funk are not entitled to summary judgment on the basis of qualified immunity.

## CONCLUSION

In light of the foregoing, the Court hereby orders as follows:

1. For the foregoing reasons, defendants' motion for summary judgment is GRANTED as to defendants Forman, Tong, and Dixon, and DENIED as to the defendants Cantrell, Pomeroy, Thomas, Moody and Funk.

2. Because pro bono counsel may be available to represent plaintiff, plaintiff **shall file with the Court,** within **thirty (30) days** of the date of this order, a request for appointment of counsel or a notice that plaintiff intends to proceed without an attorney.  If plaintiff requests appointment of counsel, the Court will endeavor to locate an attorney to represent him pro bono, i.e., at no cost to plaintiff.  Plaintiff is hereby advised that if plaintiff does not request appointment of counsel, plaintiff will continue to proceed pro se and will be required to represent himself in all future proceedings, including trial.

3. This order terminates Docket Nos. 23 and 28.

**IT IS SO ORDERED.**

Dated: July 27, 2005

_____
MAXINE M. CHESNEY
United States District Judge